Morris H. Berk, Appellant, *v.* Schenectady Hotel Co., Inc., Doing Business under the Name of Van Curler Hotel, Respondent.

Third Department, January 9, 1952.

*Harold A. Gordon* and *Charles S. Tracy* for appellant.

*Laurence V. Benedict* for respondent.

Coon, J. Plaintiff with a companion, one Rudolph, arrived at the Van Curler Hotel in Schenectady, N. Y., on September 29, 1946, at about 8:30 P.M. They were assigned to the same room as paying guests of the hotel. They had driven that day from their homes in Pennsylvania, where both were business men, to attend a meeting pertaining to their business, which was to occur the following day. Neither used the shower in the hotel room bath that evening. The following morning between seven and seven thirty o'clock, plaintiff wished to take a cold shower. His companion, Rudolph, remained in bed reading a newspaper. Plaintiff's testimony is that he stepped into the tub, fixed the shower curtain inside the tub, and turned a faucet marked " cold ". Instead of cold water, hot water came out. Plaintiff describes it as " a burst of hot water and scalding steam ". Plaintiff stepped suddenly backward and fell across the edge of the tub. He shouted and his companion, Rudolph, came to his rescue, and found the plaintiff with his body partly outside and partly inside the tub, with the hot water still running from the shower.

After carrying plaintiff to the bed, Rudolph returned and found that both faucets in the bath were marked " cold " in black letters upon white porcelain. Defendant concedes that such was the case. The events in the bathroom are entirely undisputed. The hot water faucet had been marked " cold " for some time, and defendant's only excuse is that faucets had been difficult to obtain. However, they were obtainable at that time, and, of course, could have been relabeled in a number of ways. The only other defense offered by defendant was that the heat of the water was thermostatically controlled at 145 degrees, and could not have produced steam. Even so, water of 145 degrees is too hot, and its sudden application to the body, especially when cold water was expected, could produce a shock. An impulse to escape would be inevitable.

The plaintiff contends that the verdict is against the weight of evidence. That is the sole question presented.

The only real conflict in the case pertains to plaintiff's injuries. As to some of his injuries which developed some time later there is a real conflict. However, it is without dispute that plaintiff sustained some injuries which were immediately evident, and any finding to the contrary would be unsupported by evidence.

Thus there is presented a situation on undisputed testimony from which the question of negligence and contributory negligence must be determined. Defendant's duty of reasonable care was certainly not fulfilled when it knowingly mislabeled a hot water faucet. Such conduct amounted to an open invitation to a paying guest to rely upon the fact that turning that faucet would produce cold water. Defendant knowingly set up a situation which invited injury, foreseeable in the exercise of ordinary prudence. In *Hansen* v. *United Stores Realty Corp.* (257 N. Y. 584), a plaintiff's verdict was sustained in favor of a hotel guest because faulty construction resulted in scalding water emerging from a shower when plaintiff turned the handle on the shower mixer to a point between '' cold '' and '' warm ''.

Defendant urges that plaintiff was guilty of contributory negligence in that he did not elect to take a shower in the '' customary '' manner, did not '' test '' the temperature of the water from outside the tub, and did not discover that both faucets were marked '' cold '' and investigate. There was no need for plaintiff to '' test '' the water, because all he wanted was cold. He was under no legal duty to follow any particular procedure in taking a shower, nor was he bound to investigate beyond defendant's open invitation to be sure the water would be cold.

Precedents are of little value in cases involving the weight of evidence. Each case must depend upon its own particular facts. That a court may and should, under proper circumstances, set aside the verdict of a jury as against the weight of evidence, is beyond question. An excellent discussion of the subject in general will be found in the opinion of Mr. Justice BERGAN in *Rapant* v. *Ogsbury* (279 App. Div. 298), decided at this term. Here there is no conflict of testimony on the questions of negligence, contributory negligence, and injuries of at least some degree. The jury was not weighing the credibility of witnesses. Upon undisputed evidence the verdict of the jury seems so grossly contrary to the evidence that it could not have been based upon the evidence. A new trial is necessary in the interest of justice.

The judgment and order should be reversed on the law and facts, and a new trial ordered, with costs to abide the event.

FOSTER, P. J., HEFFERNAN, BREWSTER and BERGAN, JJ., concur.

Judgment and order reversed, on the law and facts, and a new trial ordered, with costs to abide the event.